IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

STEPHEN UPTON,

            Plaintiff,

v.                                     CIVIL ACTION NO. 3:10-0973

LIBERTY MUTUAL GROUP, INC.,

            Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Stephen Upton's Motion to Remand (Doc. 4). For the following reasons, the motion is **GRANTED** and this case is hereby **REMANDED** to the Circuit Court of Mason County, West Virginia**.**

**Background**

This case, originally filed on or about July 19, 2010, in the Circuit Court of Mason County, West Virginia, concerns a homeowner's insurance claim made by Plaintiff against his policy with Liberty Mutual Group, Inc. ("Liberty Mutual"),[1] on August 24, 2009. According to the Mason County complaint, Plaintiff's home suffered damage as a result of forced entry and vandalism in August 2009. The damage included injury to the home's exterior doors, plumbing, and laminate flooring, as well as water damage caused by flooding.

Following submission of his claim, on September 1, 2009, Plaintiff was contacted by a

---

[1] According to Defendant, it was improperly named and is, in fact, Liberty Mutual Fire Insurance Company. For ease of reference, the Court will refer to Defendant as "Liberty Mutual."

Liberty Mutual representative, who informed Mr. Upton that the insurer would require him to submit his homeowner's claim as two separate claims: (1) for the damage to the home's doors, and (2) for the water damage. Shortly thereafter, Liberty Mutual notified Plaintiff that his claim for the damage to the doors was denied because the cost for repairs was less than the applicable $5,000 deductible.

Mr. Upton alleges that Liberty Mutual denied the claim without ever conducting a site visit or other inspection. Moreover, he claims that, between September 1, 2009, and September 14, 2009, he called Liberty Mutual representatives to inquire about the status of his claim repeatedly and was, largely, ignored. On September 14, 2009, a field adjuster for Liberty Mutual, Marcus Ogelsby, contacted Plaintiff and arranged a site investigation. Mr. Ogelsby was set to visit Plaintiff's home on September 15, 2009. In the course of the phone call, Plaintiff advised the adjuster that he had completed some repair work, following the forced entry and vandalism. Allegedly, Mr. Ogelsby advised Mr. Upton that he must cease any repairs. However, Mr. Upton continued, stating that the repairs were necessary to make his home livable.

On September 15, 2009, Mr. Ogelsby went to Mr. Upton's home to conduct a field investigation. On October 1, 2009, Liberty Mutual advised Plaintiff of its determination that: (1) his water damage and vandalism claims were unrelated, and (2) separately, the claims did not meet the $5,000 threshold. The claims were, therefore, denied.

Plaintiff challenged the denials. He argued the damage should be considered one claim and that the cost for repairs well exceeded the $5,000 deductible. At this point, Liberty Mutual provided Plaintiff with an itemization for the cost of repairs. Plaintiff deemed the itemization "drastically insufficient," *Compl.* (Doc. 1-1), at ¶ 1.13, and, next, Liberty Mutual conducted a site visit and inspection of Plaintiff's home using a field adjuster and a company-chosen contractor. The

contractor provided a new quote for the cost for repairs, estimating the cost to repair the damage to the home's doors at $1,921.72, and the cost to repair the water damage at $14,005.27.

On October 14, 2009, Liberty Mutual tendered a check to Plaintiff for the amount of the estimated cost to repair the water damage less the deductible ($9,005.27). *Id.* at ¶ 1.16. However, the claim for the cost to repair the damage to the home's door was denied as less than the $5,000 deductible.

According to Plaintiff, he questioned Liberty Mutual's estimate and informed the insurer that he would not be using their contractor to conduct repairs. Plaintiff alleges Liberty Mutual sent him the $9,005.27 check despite this disagreement. *Id.* at ¶ 1.17. On November 9, 2009, Plaintiff then contacted a second contractor for an estimate for the cost to repair his home. This contractor performed a site inspection and, on November 24, 2009, tendered an estimate of $1,585.90 for the cost to repair the home's doors and $18,385.60 for the water damage, for a total damage cost of $19,971.50. In addition to this cost, Plaintiff alleges it would cost an additional $3,662.06 to move or replace the home's granite counter tops, a cost he had estimated by a licensed installer and which was not included in either Liberty Mutual's or Plaintiff's contractors' assessments. This brings the highest total estimate for all repairs to $23,633.56.

In his complaint, Plaintiff alleges Liberty Mutual advised Plaintiff that it did not accept his contractor's estimate on December 15, 2009. Liberty Mutual agrees it advised Plaintiff, accordingly, but contends that it did so after receiving the contractor's estimate in January 2010. In either case, the parties agree that, on January 27, 2010, Liberty Mutual notified Plaintiff it would pay an additional $1,862.90 on the sums claimed under his homeowner's policy. *See id*. at ¶ 1.21; *Ans.* (Doc. 6), at ¶ 21. This brought Liberty Mutual's total payment to $10,868.17.

On or about July 19, 2010, Plaintiff filed suit in Mason County. Mr. Upton's complaint claims: (1) that Liberty Mutual denied his homeowner's policy claim at least ten times during the claims process; (2) that he was forced to live for a period of time with broken exterior doors, no running water, standing floor water, and continued water damage and mold; and (3) that Liberty Mutual knew or reasonably should have known that his damage far exceeded $5,000, meaning the insurer acted unreasonably in not promptly mitigating his claim. Accordingly, Plaintiff brings several *pro se* cause of actions against Liberty Mutual. The Court construes these claims to include, but not be limited to: breach of contract, fraud, bad faith, failure to properly train and supervise employees, and unfair trade practices. In this action, Plaintiff seeks compensatory, general, special, incidental, and consequential damages, including damages for general mental anguish and emotional distress, past and future; reasonable attorneys fees (if so used); and punitive damages. No amount is specified in Plaintiff's *ad damnum* clause, however.

On August 2, 2010, Liberty Mutual removed the action to this Court, pursuant to 28 U.S.C. §1332(a)(1). The insurer argues removal is appropriate because there is complete diversity and Plaintiff's claims reach the threshold amount of $75,000. In support of its claim that the jurisdictional amount is satisfied, Liberty Mutual contends that Plaintiff seeks to recover approximately $25,000 in compensatory damages for insurance proceeds, and that, when combined with his possible recovery for bad faith, attorneys fees, and punitive damages, this sum claimed exceeds $75,000. Plaintiff now moves to remand. According to Plaintiff, the threshold jurisdictional amount of $75,000 has not been placed in controversy.

**Analysis**

The federal district courts are courts of limited jurisdiction, "[t]hey possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005); *see also Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008) (same). As a result, removal jurisdiction is strictly construed, *Mulchahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994), and the party seeking removal has the burden of establishing federal jurisdiction. *Id*; *see also Strawn*, 530 F.3d at 296; *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey,* 29 F.3d at 151.

Title 28 U.S.C. § 1332(a)(1) provides: "The district courts shall have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between– (1) citizens of different States[.]" 28 U.S.C. § 1332(a)(1). Therefore, to establish this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332, a defendant must demonstrate: (1) complete diversity, and (2) that the amount in controversy exceeds $75,000.

Here, the dispositive question is whether the amount in controversy exceeds the jurisdictional amount. Consistent with the general principles governing federal jurisdiction, "in a removal action in which federal jurisdiction is premised upon 28 U.S.C. § 1332, the defendant bears the burden of proving that [the] plaintiff's claim exceeds the jurisdictional amount." *Sayre v. Potts*, 32 F.Supp.2d 881, 883-84 (S.D. W.Va. 1999); *see also Landmark Corp. v. Apogee Coal Co.*, 945 F.Supp. 932, 935 (S.D. W.Va. 1996). Whether the jurisdictional threshold is satisfied is generally determined by reference to the amount specified in the plaintiff's complaint. *See, e.g., Wiggins v. North Am.*

*Equitable Life Assurance Co.*, 644 F.2d 1014, 1016 (4th Cir. 1981); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938) ('[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal[.]"); *Sayre*, 32 F.Supp.2d at 884 ("This burden is often resolved without debate because a plaintiff's good-faith claim for specific monetary damages in the complaint binds the defendant.") (citing *Red Cab*). However, where the complaint does not specify an amount in controversy, the removing party must prove the jurisdictional amount by a preponderance of the evidence. *See, e.g., Bartinowski v. NVR, Inc.*, 307 Fed.App'x. 730 (4th Cir. 2009) (unpublished opinion) (employing a preponderance of the evidence test to determine amount in controversy); *McCoy v. Erie Ins. Co.,* 147 F.Supp.2d 481, 489 (S.D. W.Va. 2001) (same); *Whitney v. State Farm Mutual Automobile Insurance Company,* No. 3:98-0241 (S.D. W.Va. June 29, 1998) (Chambers, J.) (same); *Canterbury v. Scott*, 2010 WL 610052 (S.D. W.Va. Feb. 18, 2010) (Chambers, J.) (same).

Liberty Mutual has not met this burden. Reasonable attorneys fees and punitive damage awards may be considered when establishing the jurisdictional amount. *See, e.g., Weddington v. Ford Motor Credit Co.*, 59 F.Supp.2d 578, 583-84 (S.D. W.Va. 1999) (considering punitive damages and attorneys fees); *Mullins v. Harry's Mobile Homes, Inc.*, 861 F.Supp. 22, 24-25 (S.D. W.Va. 1994) (considering punitive damages). Prejudgment and post-judgment interests, as required by law, are also considered. *See Weddington*, 59 F.Supp.2d at 583; *Landmark Corp.*, 945 F.Supp. at 936. Moreover, this Court is aware that "[c]ourts in West Virginia have let stand punitive damages awards substantially in excess of compensatory damages recovered in the same case." *Mullins*, 861 F.Supp. at 24; *Weddington*, 59 F.Supp.2d at 584 (same). Nonetheless, the Court finds that Liberty Mutual has not shown that this action places an amount in controversy exceeding $75,000.

According to the highest estimates provided in the complaint, the cost to repair the water damage and exterior doors of Plaintiff's home is $23,633.56. This includes the estimate of $1,585.90 for the cost to repair the doors, $18,385.60 for the water damage, and $3,662.06 to move or replace the home's granite counter tops. It is undisputed that Plaintiff's homeowner's policy contains an applicable deductible of $5,000. Thus, according to the highest estimates provided, the greatest amount Liberty Mutual could be required to pay Plaintiff, under his homeowner's policy, for the damages claimed, is $18,633.56. The parties appear to agree that Liberty Mutual tendered a check to Plaintiff for $9,005.27 in October 2009, and that the insurer provided an additional $1,862.90 in January 2010, for a total payment of $10,868.17. Thus, applying the highest cost estimates in the complaint, according to this Court's calculations, the greatest amount that could still be at issue with respect to Plaintiff's insurance proceeds is $7,765.39. As a result, in order to meet the jurisdictional threshold, Liberty Mutual would need to show that, taken together, Plaintiff's claims for bad faith, attorneys fees, and punitive damages equal approximately $70,000.

Plaintiff is proceeding *pro se*. Therefore, at the time of his complaint and removal, there are no attorneys fees at issue. *See Sayre*, 32 F.Supp.2d at 886 ("[T]he amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal."). "In reaching a conclusion with regard to the amount in controversy based on [the] evidence, the court 'is not required to leave its common sense behind.'" *Id.* at 886-87 (quoting *Mullins*, 861 F.Supp. At 24). Here, due to a lack of attorneys fees and contract damages of $7,765.39, in order to find federal jurisdiction appropriate, the Court would need to find that Plaintiff's bad faith and punitive damages claims totaled approximately $70,000. Applying its common sense, the Court concludes that Liberty Mutual has not shown this by a

7

preponderance of the evidence. Consequently, Plaintiff's motion is **GRANTED** and this action is **REMANDED** to the Circuit Court of Mason County, West Virginia. As Plaintiff is proceeding *pro se*, no costs are ordered in conjunction with Liberty Mutual's motion to remand.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: September 1, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE